**FILED**

**May 16, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 3:03 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| Jason Sanker, | ) Docket No.: 2016-06-0101 |
| Employee, | ) |
| v. | ) State File Number: 76713-2015 |
| Nacarato Trucks, Inc., | ) |
| Employer, | ) Judge Kenneth M. Switzer |
| And | ) |
| FFVA Mutual, | ) |
| Insurance Carrier. | ) |
| | ) |

---

## EXPEDITED HEARING ORDER GRANTING ADDITIONAL MEDICAL BENEFITS

---

This case came before the undersigned workers' compensation judge on the Request for Expedited Hearing filed by the employee, Jason Sanker, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this matter is Mr. Sanker's entitlement to additional medical benefits.[1] The central legal issue is whether Mr. Sanker suffered a compensable injury on September 9, 2015, while working for the employer, Nacarato Trucks, Inc.

At the April 7, 2016 expedited hearing, the Court heard Employer's Motion for an Independent Medical Examination. The Court took the motion under advisement and subsequently issued an order granting the I.M.E. and reserving ruling on the Mr. Sanker's entitlement to benefits until the Court had an opportunity to consider the I.M.E. physician's findings along with the other evidence. (T.R. 11.) The Court received the I.M.E. physician's report on May 10, 2016. Having duly considered the I.M.E. report and supplemental argument regarding it, as well as evidence and argument from the

---

[1] Mr. Sanker's entitlement to past temporary total disability benefits is checked as an issue on the Dispute Certification Notice. In Mr. Sanker's January 21, 2016 position statement, he indicated he seeks past temporary total disability benefits from November 24, 2015, through December 21, 2015. However, at the expedited hearing, Mr. Sanker's counsel withdrew that request. The Court considers any other issues listed on the Dispute Certification Notice but not raised at the expedited hearing as waived.

1

expedited hearing, for the reasons set forth below, the Court finds Mr. Sanker is likely to prove he suffered a compensable injury on September 9, 2016, and is entitled to additional medical benefits.[2]

## History of Claim[3]

Mr. Sanker is a thirty-six-year-old resident of Dickson County, Tennessee. (T.R. 1.) He works at Nacarato Trucks, Inc., a Volvo truck dealer, as a service technician. (Ex. 3.)

On September 9, 2015,[4] while performing his job duties, Mr. Sanker felt a "pop" in his back and experienced immediate, severe pain. (Ex. 2 at 1.) He reported the claim, Nacarato offered a panel,[5] and Mr. Sanker selected Dr. Tarek Elalayli, the physician who treated Mr. Sanker for a previous workers' compensation injury to his low back sustained on July 1, 2014. The previous injury required two operations, and resulted in the assignment of a seven percent impairment rating to the body as a whole. (Ex. 7.) Mr. Sanker stated in his affidavit he recovered from the previous injury. (Ex. 2 at 1.)

Dr. Elalayli saw Mr. Sanker on September 30, 2015, where he wrote as history: "He states that he was doing 100% better until he had a new injury on 9/18/15. He was laying on his back and pushing hard with a ratchet and felt a pop in his lower back. He had immediate pain in the lower back with radiation to the left leg." (Ex. 1 at 82.) Dr. Elalayli further noted, "Patient has reinjured his back after a new work injury on 9/18/2015. Prior to that injury, he was doing quite well." *Id.* at 83. Dr. Elalayli treated Mr. Sanker conservatively for approximately seven weeks, noting at a November 18, 2015 office visit that surgery might be the only option if Mr. Sanker did not improve. *Id.* at 102.

In a document entitled "Medical Questionnaire," (*See generally* Ex. 2 at 105), Nacarato asked Dr. Elalayli, "Can you state within a reasonable degree of medical certainty whether Mr. Sanker's current condition was equally caused by both his prior low back injuries, which necessitated surgery in November 2014 and a redo surgery in April 2015, along with his alleged September 18, 2015 accident[?]" In his November 18,

---

[2] A complete listing of the technical record and exhibits is attached to this order as an appendix.

[3] Mr. Sanker did not appear at the expedited hearing, and neither side called any witnesses. The Court, therefore, wrote the History of Claim in reliance upon the exhibits and technical record.

[4] While the First Report of Injury, prepared by Nacarato, lists the date of injury as September 18, 2015 (Ex. 5), Mr. Sanker wrote September 9, 2015, on the Petition for Benefit Determination. The parties stipulated at the expedited hearing to September 9, 2015, as the date of alleged injury.

[5] Mr. Sanker checked the box on the PBD that he was not provided a panel. Neither party filed or introduced a "Choice of Physicians" form into evidence at the expedited hearing, but the parties stipulated that Nacarato provided a panel.

2015 reply, Dr. Elalayli checked "yes." The questionnaire then asked, "After reviewing your medical records, please confirm that Mr. Sanker has previously been assigned a 7% impairment rating as a result of his low back injuries that resulted in surgery in November 2014 and April 2015, and which involves the same level that he is currently complaining of[.]" Dr. Elalayli wrote, "Correct." The document then states, "I hereby certify that the information furnished is correct and am aware that my signature attests to its accuracy. I further certify that all opinions are formulated within a reasonable degree of medical certainty." Dr. Elalayli signed below. On November 24, 2015, Nacarato denied the claim. (Ex. 5.)

Mr. Sanker returned to Dr. Elalayli on December 16, 2015. (Ex. 1 at 106-109.) Dr. Elalayli wrote:

> **Treatment**
> **1. Lumbar disc herniation with radiculopathy**
> Notes: The is not compensable appears to be a form that I filled out for work comp right checked off "yes" when I was asked if his current problem is equally related to the patient's previous surgery and the 9/18/2015 injury. Because of this, the patient has been told that the current issue is not compensable. I feel the need to clarify this. The patient did have previous surgery related to a previous injury, but states that he was doing very well and working without difficulty until 9/18/2015 when he suffered another work injury. Since that time, he has had significant pain. While his current issue is in part related to the original surgery, his current pain complaints are certainly greater than 50% related to the 9/18/2015 injury. This is based on his history of not having significant pain prior to that date. At the patient's request, I will allow him to return to work without restrictions on 12/21/2015. He has not returning to work because his pain is resolved, rather he is returning to work because he needs the money. He has not getting work comp benefits at this time. I'm going to provide him with a prescription for Percocet because he found that helpful in the past. I'm happy to offer him further treatment, pending the situation getting sorted out.

*Id.* at 106. Mr. Sanker returned to work, full-duty.

The parties deposed Dr. Elalayli on March 28, 2015, who expressed his opinions on causation to a reasonable degree of medical certainty. (Ex. 6 at 6.) Upon questioning by Mr. Sanker's counsel, he discussed resolution of the July 2014 work injury as follows:

Q.    Doctor, you had performed the two surgeries that have been thoroughly discussed regarding Mr. Sanker back in November of 2014, and then again in March of 2015; correct?

A.    Yes.

Q.    And then you released him in—on June 8th, 2015 to return to work without any restrictions associated with that injury; correct? . . .

3

A.     That's correct.

Q.     And that his radicular complaint that he had prior to the second surgery had essentially resolved?

A.     That's correct.

*Id.* at 24-25.

Dr. Elalayli then discussed Mr. Sanker's post-injury ability to work and the alleged injury that is the subject of this claim:

Q.     [T]o your knowledge, from June of 2015 until September of 2015, he performed his full duty work activities without difficulty or limitation?

A.     That's my understanding.

Q.     And that's consistent with the history that he provided to you?

A.     Yes.

Q.     And he didn't see you during that time period for any ongoing problems or difficulties?

A.     He did not.

Q.     And then he came in and reported that he had had a new acute work incident?

A.     Correct.

Q.     And that he had been at work and had felt a pop in an acute onset of radicular complaints?

A.     Correct.

*Id.* at 25-26.

During the deposition, Dr. Elalayli offered additional clarification regarding his response to the "Medical Questionnaire":

A.     I did feel that it's related to the previous injury, previous surgery and the more recent injury, but to say equal doesn't really make a whole lot of sense. I think it would be fairly arbitrary to say that, you know, each of them is exactly 50 percent related.

4

I think there's definitely a relatedness to the previous injury and previous surgery because we know that there is a risk of recurrent disc herniation when he had disc surgery. That statistically is 5 to 10 percent. But I think it's important to factor in that he told me that he was basically 100 percent better after his surgery, when he had been released.

And not only that, he did have a new injury which resulted in the sudden onset of symptoms. If he had developed progressively, worsening pain with time, without any new injuries, then I would say it's more than 50 percent related to the 2014 injury. But when he's doing much better and has a new trauma with sudden onset of pain, at that point, I think it's more than 50 percent related to the 9-18-2015 incident.

Q. And, Doctor, that's what you outlined as well in your medical record in December of 2015?

A. I think that's what I was trying to say.

Q. And so, Doctor, for the purpose of clarifying as well, that not only was your opinion at that time in December of 2015, but would be also your opinion today?

A. It is.

*Id.* at 28-29.

Dr. Gray Stahlman performed the I.M.E. on April 29, 2016. Dr. Stahlman's report notes:

[H]e underwent redo discectomy at L5-S1 for a recurrent disc herniation apparently found on MRI. This surgical procedure provided him with substantial relief of his symptoms, and he was ultimately able to return to work full duty as a diesel mechanic. He tells me that at the time of his release he was really having little difficulty. On or about September 18, 2015, he was working under a truck, essentially flexed upward to try to ratchet a bolt, and felt a pop in his lower back[.] . . . Ultimately, he was referred back to Dr. Elalayli, who treated him with medications, and a repeat MRI which revealed a recurrent disc herniation. It was at this point the [sic] Dr. Elalayli recommended decompression and fusion at L5-S1 for a third rupture of the disc at that level.

5

(Ex. 8 at 1.) Dr. Stahlman characterized Mr. Sanker as a "[g]ood historian." *Id.* at 2. Dr. Stahlman indicated he reviewed Dr. Elalayli's deposition transcript and treatment records of Mr. Sanker, as well as MRI reports and operative notes. *Id.* With regard to causation, Dr. Stahlman concluded, "Mr. Sanker has suffered what appears to be a third time herniation at L5-S1 on the right side. This was directly associated with a flexion-based activity at work, and this type of mechanism is consistent with his recurrence." *Id.* Dr. Stahlman additionally opined:

> The need for a fusion is really related to a third disc herniation at the same level, and his symptoms. In general terms, recurrent disc herniations often require a little traumatic force to occur. Approximately 25% of patients will rerupture a disc at the same level, and after a second discectomy again 25% or greater patients will recur a disc herniation. Because of this, it is my opinion that apportionment of responsibility leading to the need for the surgery is appropriate. I believe that 75% of the responsibility of the recurrent disc herniation is borne by the previous two herniations and subsequent deterioration of the disc, and 25% of the responsibility would be borne by the most recent event.

*Id.* at 3. Dr. Stahlman further agreed surgery is appropriate. *Id.*

On May 13, 2016, Mr. Sanker filed an additional I.M.E. Report, dated April 22, 2016. The Court marked this document as Exhibit 9 for identification only, but declined to admit it into evidence or consider it.[6]

### Findings of Fact and Conclusions of Law

The Court must apply the following legal principles to determine whether Mr. Sanker is entitled to the relief he seeks. Mr. Sanker bears the burden of proof on all prima facie elements of his workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). Mr.

---

[6] Tennessee Compilation Rules and Regulations 0800-02-21-.14(1)(a) (2015) requires motions for expedited hearing to be "accompanied by affidavits and any other information" demonstrating the employee is entitled to benefits. Mr. Sanker did not file the I.M.E. report along with his Request for Expedited Hearing. At no time during the April 7, 2016 expedited hearing did Mr. Sanker communicate an intention to seek his own independent medical examination for the Court's consideration at the interlocutory phase. Had he done so, the Court would have likely ruled on it as part of its April 12, 2016 Order. Instead, as that order reads, the Court allowed Mr. Sanker three days to file a "response," e.g. *argument,* after Nacarato filed Dr. Stahlman's IME report. The order gave Mr. Sanker until 4:00 p.m. on May 13, 2016, to file his response. Mr. Sanker had this additional I.M.E. report in his possession since April 22, 2016, but failed to file it until one-half hour before the deadline the Court imposed, effectively foreclosing Nacarato from any opportunity to object to its admissibility or articulate a position regarding its findings. In addition to violating the rules regarding the submission of information, fairness dictates the Court decline to consider this document at the interlocutory phase.

6

Sanker need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Mr. Sanker has the burden to come forward with sufficient evidence from which the trial court can determine that he is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6.

The Tennessee Workers' Compensation Board of Appeals discussed work-related aggravations of pre-existing conditions under the 2013 Reform Act as follows:

> [T]o qualify for medical benefits at an interlocutory hearing, an injured worker who alleges an aggravation of a preexisting condition must offer evidence that the aggravation arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(13)(A) (2015). Moreover, the employee must come forward with sufficient evidence from which the trial court can determine that the employee would likely establish, to a reasonable degree of medical certainty, that the work accident contributed more than fifty percent in causing the aggravation, considering all causes. *See* Tenn. Code Ann. § 50-6-102(13)(B)-(C). Finally, an aggravation or exacerbation need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by the aggravation.

*Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *18 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015). In addition, Dr. Elalayli's opinion, as the authorized treatment provider, is presumed correct on the issue of causation, but this presumption shall be rebuttable by a preponderance of the evidence. *See* Tenn. Code Ann. § 50-6-102(14)(E) (2015).

Applying these principles, Dr. Elalayli, who has treated Mr. Sanker since the July 2014 work injury and is therefore well-versed in his history and condition, noted on December 16, 2016, "While his current issue is in part related to the original surgery, *his current pain complaints are certainly greater than 50% related to the 9/18/2015 injury.*" (Emphasis added.) More recently, Dr. Elalayli testified, "[H]e did have a new injury which resulted in the sudden onset of symptoms. . . . [W]hen he's doing much better and has a new trauma with sudden onset of pain, *at that point, I think it's more than 50 percent related to the 9-18-2015 incident.*" (Emphasis added.) Dr. Elalayli maintained this opinion throughout the vigorous, lengthy examination from Nacarato's counsel at the

7

deposition.

The Court allowed Nacarato to obtain an I.M.E. before issuing this order. Nacarato asserts Dr. Stahlman's report rebuts Dr. Elalayli's findings. The Court disagrees. Nacarato relies on Dr. Stahlman's assessment that "75% of the responsibility of the recurrent disc herniation is borne by the previous two herniations and subsequent deterioration of the disc, and 25% of the responsibility would be borne by the most recent event." However, Dr. Stahlman also opined, "Mr. Sanker has suffered what appears to be a third time herniation at L5-S1 on the right side. *This was directly associated with a flexion-based activity at work, and this type of mechanism is consistent with his recurrence.*" (Emphasis added.) The latter statement is the more definitive statement on causation of the present herniation, thus causing the need for medical treatment.

Nacarato's insistence that Mr. Sanker was not fully healed from the July 2014 incident and resulting second back injury is not borne out by its own expert's conclusion. Specifically, Dr. Stahlman wrote, "There is some notation that he had some continued aching discomfort in his lower back and occasional pain in his right hip. *This is not uncommon after discectomy.*" (Emphasis added.)

Moreover, "[i]n evaluating conflicting expert testimony, a trial court may consider, among other things, 'the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts.'" *Brees v. Escape Day Spa & Salon,* No. 2014-06-0072, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2015), *citing Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991). Here, with regard to the circumstances of their examination, Dr. Elalayli brings approximately eighteen months' experience treating Mr. Sanker; Dr. Stahlman saw him once. Further, Dr. Stahlman does not indicate his opinions are rendered to a reasonable degree of medical certainty.

In sum, Dr. Stahlman's report fails to rebut Dr. Elalayli's opinion and, in fact, agrees the described event caused the recurrent herniation. Stated another way, the Court finds these experts are not actually in conflict regarding the fact that the recurrent herniation resulted from work-related activity. Dr. Stahlman's subsequent opinion regarding apportionment of the need for surgery, rather than the cause of the current injury, is not legally relevant. Therefore, as a matter of law, Mr. Sanker has come forward with sufficient evidence from which this Court concludes he is likely to prevail at a hearing on the merits regarding the compensability of his claim.

Having so found, the Court now turns to the requested medical benefits. Mr. Sanker satisfied his burden at this interlocutory stage to show he sustained a compensable work injury. Thus, Nacarato must furnish, free of charge to Mr. Sanker, such medical treatment made reasonably necessary by the accident. *See* Tenn. Code Ann. § 50-6-

8

204(a)(1)(A) (2015). Both physicians agree the appropriate method of treatment is a decompression, discectomy and fusion at L5-S1. Given Dr. Elalayli's long-term familiarity with Mr. Sanker's condition, it is appropriate he continue to serve as the authorized treatment provider. Nacarato shall be responsible for any reasonable and necessary treatment, including surgery.

**IT IS, THEREFORE, ORDERED** as follows:

1. Nacarato or its workers' compensation carrier shall provide Mr. Sanker with medical treatment with Dr. Elalayli as the authorized treatment provider for his injury as required by Tennessee Code Annotated section 50-6-204 (2015). Medical bills shall be furnished to Nacarato or its workers' compensation carrier by Mr. Sanker or the medical providers.

2. This matter is set for an Initial (Scheduling) Hearing on July 11, 2016, at 8:30 a.m. Central Time.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 16th day of May, 2016.**

**Judge Kenneth M. Switzer**
**Court of Workers' Compensation Claims**

9

<u>Initial (Scheduling) Hearing</u>:

An Initial (Scheduling) Hearing has been set with **Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or 866-943-0025 toll-free to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. Medical Records
2. Affidavit of Jason Sanker
3. FROI, September 24, 2015
4. Wage Statement, October 15, 2015
5. Notice of Denial of Claim for Compensation, November 24, 2015
6. Deposition of Dr. Elalayli and his C.V., March 28, 2016[7]
7. Petition for Benefit Determination and settlement documentation for July 2014 injury
8. Independent Medical Examination, May 10, 2016
9. Independent Medical Examination, May 13, 2016-For identification only

Technical record:

1. Petition for Benefit Determination, January 25, 2016
2. Employee's position statement, January 21, 2016
3. Employer's position statement, February 9, 2016
4. Dispute Certification Notice, February 23, 2015; incorporates additional issues listed in Nacarato's counsel's letter dated February 16, 2016
5. Request for Expedited Hearing, February 23, 2016
6. Notice of Deposition, March 1, 2016
7. Employer's Motion to Compel I.M.E., March 10, 2016
8. Employee's Response to Motion to Compel I.M.E., March 15, 2016
9. Employer's Reply Brief, April 1, 2016
10. Employer's Prehearing Brief, April 6, 2016
11. Order Granting Motion to Compel Independent Medical Examination, April 12, 2016
12. Notice of Filing I.M.E. Report, May 10, 2016
13. Employer's Supplemental Brief, May 10, 2016
14. Employee's Notice of Filing I.M.E. Report

---

[7] The parties stipulated to the omission of Exhibit 2 to Dr. Elalayli's deposition because it consists of his treatment notes, also marked and admitted into evidence as Exhibit 1, pages 9 through 112.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 16th day of May, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Marshall "Trey" McClarnon, Employee's Counsel | | | X | marshall@poncelaw.com; wendy@poncelaw.com |
| Alex Morrison, Todd Hierd, Employer's Counsel | | | X | ABMorrison@mijs.com; agcroft@mijs.com; tihierd@mijs.com |
| Ronald McNutt, Second Injury Fund's Counsel | | | X | Ronald.McNutt@tn.gov |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov